UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA             :
:
: Docket No.: 04-CR-876 (JS)
:
  -v-                                 :
:
:
:
JOSEPH P. MUTINO                      :
:
    Defendant.                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# REPLY TO THE GOVERNMENT'S OPPOSITION
# TO JOSEPH MUTINO'S MOTION FOR CORAM NOBIS RELIEF

CREIZMAN PLLC
Eric M. Creizman (EC-7684)
565 Fifth Avenue, Floor 7
New York, New York 10017
Tel.: (212) 972-0200
Fax: (646) 200-5022
Email: ecreiz@creizmanllc.com

i

Joseph Mutino, by his attorneys, submits this reply memorandum in support of his *coram nobis* motion to recover the sum of $645,187.82 that was improperly forfeited by the government.

## PRELIMINARY STATEMENT

In its opposition brief, the government essentially concedes Mutino's principal arguments that establish his claim to the forfeited funds. As an initial matter, the government does not dispute that Mutino caused a timely third-party petition to be filed in the *Mohawk* Action with respect to the Bayside Funds on behalf of JPM Contracting Corp., the company he wholly and solely owned. Nor does the government contest that the Federal Rules of Criminal Procedure required a hearing to evaluate JPM's asserted interest in the Bayside Funds. The government also does not contest that the information JPM provided to the government at the time demonstrated that the bulk of the Bayside Funds were due and owing JPM, and that none of the funds were due and owing Mohawk.

The government also simply ignores and does not respond to the incontrovertible evidence presented by Mutino that it struck a plea bargain with Mutino based on its agreement and promise that Mutino would not have to "waive any and all rights claims to any and all monies currently held by the City of New York relating to the Bayside project." Creizman 12-29-14 Decl., Ex. M at 3-4. Indeed, the final cooperation agreement does not include that previously-insisted upon requirement, and instead required Mutino to forfeit $100,000, representing the illicit proceeds of the VVSS MBE fraud. *Id.* Ex. B at 4. The government simply ignores the fact that it was obligated under the cooperation agreement not to forfeit the Bayside Funds, and dishonored that obligation. The government therefore does not and cannot dispute that Mutino justifiably relied on the government's promise not to forfeit the Bayside

1

Funds and had a right to believe that its promise to him was not illusory. Nor does the government address the declaration under oath of its own representative at the time, former Assistant United States Attorney Joseph Conway, confirming that the government withdrew its insistence on Mutino withdrawing and waiving his rights and claims with respect to the Bayside Funds in exchange for his agreement to plead guilty. Creizman 12-29-14 Decl., Ex. N.

Rather than address, let alone acknowledge, the government's obligations to Mutino under the cooperation agreement with respect to the Bayside Funds, the government instead relies disingenuously on technicalities and post-hoc rationalizations in an attempt to justify its illegal and improper forfeiture of those funds. None of the government's arguments have merit.

*First*, the government incorrectly asserts that Mutino sat on his rights for years while never taking action to claim the funds. Although current government counsel may not have been aware of the history of this case, the fact is that Mutino timely raised the issue of the forfeited funds with the government as soon as he was made aware they were forfeited. He refrained from taking any legal action to recover the forfeited funds, however, because he was honoring his obligations under the cooperation agreement. He was not permitted to compromise the government's criminal investigation in which Mutino was cooperating. And Mutino did his part to cooperate. Indeed, in an arbitration between Mutino's joint venture partners on the Bayside Project and JPM and Mutino, the joint venture partners demanded that Mutino take legal action on behalf of the joint venture to recover the forfeited funds. Mutino informed the government of this development, and the government filed a motion to stay the arbitration. *See* Creizman Reply Decl. Ex. A. The notion that Mutino sat on his rights is simply false. He attempted to persuade the government that it should return the forfeited funds to him within the limits of his cooperation agreement.

2

Even after he was sentenced, Mutino did not sit on his rights to the Bayside Funds. Through counsel, he attempted to negotiate the return of all or some of the Bayside Funds. After it government finally expressed that it would not agree to return the forfeited funds to Mutino, Mutino filed a petition in remission of forfeiture with the Department of Justice in November 2011. Again, Mutino continued to assert his right to the funds and attempted to persuade the government that it was obligated to return those forfeited funds to him. The DOJ sat on that petition for three plus years. In fact, when it finally denied that petition, the DOJ, like the government here, did not address any of Mutino's substantive arguments, and instead justified keeping the forfeited funds because of *Mutino*'s delay in pursuing them. That is the paradigmatic example of *chutzpah*.

*Second*, the government justifies its improper forfeiture on the Bayside Funds by cynically asserting that Mutino himself never had an interest in the Bayside Funds, but only JPM did. In making this argument, the government ignores the provisions of the cooperation agreement it drafted, which imposed obligations on Mutino *and* JPM. Indeed, the cooperation agreement contains explicit language confirming that Mutino had the sole authority to bind JPM. The government should be estopped from now arguing that Mutino and JPM are separate entities simply because it is a convenient argument for keeping money that rightfully belongs to Mutino and JPM.

*Third*, the government implicitly concedes that the proceeds due and owing JPM from the Mohawk subcontract were not ill-gotten gains of minority business fraud. Indeed, the government has no answer for the fact that JPM never submitted Mohawk as an MBE subcontractor to fulfill its MBE requirements and therefore did not obtain proceeds from an illicit MBE fraud. Instead, the government now argues that the proceeds from the Mohawk

3

subcontract were illicit because JPM failed to disclose on its Vendex forms that it was a joint venturer with Rosewood as the general contractor on the Bayside job. The government never pursued this theory of fraud even in the case which it initially raised this issue, the *Catapano* case. None of the defendants in that case were ultimately prosecuted or convicted on a single count based on the theory that the "Silent" Joint Venture worked a fraud on the City. Nor has the government ever established—and cannot establish now—that any *material* misrepresentations or omissions were ever made to the City in connection with the Silent Joint Venture. The fact of the matter is that the sole basis for forfeiting the Bayside Funds was that it represented the ill-gotten gains of MBE fraud. Mutino has thoroughly debunked that theory in this motion and the government has no answer for it.

For these reasons, and the reasons set forth below, the Court should grant Mutino's motion for *Coram Nobis* relief.

### I. Mutino's Coram Nobis petition should not be denied as untimely.

The government's assertion that Mutino delayed seeking relief for fifteen years is simply incorrect and contradicted by the detailed factual record. From the moment the government illegally forfeited the Bayside Funds, Mutino asserted his rights and attempted to persuade the government to honor its obligations under his cooperation agreement and return the funds to JPM, to which the funds rightly belonged.

The government avers that although Mutino's cooperation required him "not to reveal that he was a subject/target of an investigation by the this Office, or his cooperation, or any information derived therefrom, to any third party," Mutino could have secured the government's consent to challenge the forfeiture and thereby reveal his cooperation. *See* Gov. Opp. at 12. But it is plain that he could not have obtained the government's consent, as

4

evidenced by its intervention in the JPM-Rosewood arbitration and motion for a stay. *See* Creizman Reply Decl. Ex. A. In fact, he government's principal argument for a stay is that continued litigation over the issue of the Bayside Funds would compromise the government's investigation and provide discovery to the defense to which it was not entitled. *Id.*

Mutino consistently asserted his rights—albeit not in the public forum—to the Bayside Funds and attempted to persuade the government that it should adhere to its obligations under the cooperation agreement. Even after he was sentenced, he continued to pursue negotiations with the government. When the government terminated those negotiations, Mutino filed a petition in remission, which the *DOJ*, not Mutino, sat on for over three years. Mutino brings this *coram nobis* application only as a last resort to vindicate his rights to the forfeited funds.

**II. Mutino's *coram nobis* motion is appropriate to recover funds due and owing JPM because JPM was bound by obligations set forth in the cooperation agreement.**

Mutino's *coram nobis* application should not be denied based on the government's flawed argument that it was technically JPM—and not Mutino—who filed the third-party petition in the *Mohawk* case to adjudicate its interest in the Bayside Project. That fact does not diminish Mutino's interest in and right to the Bayside Funds because Mutino was the sole owner of JPM and the government treated Mutino and JPM as the same under the cooperation agreement. Indeed, the cooperation agreement explicitly imposes obligations on JPM and confirms that Mutino is duly authorized to bind JPM to the obligations of the cooperation agreement:

> The defendant represents that he is duly authorized to bind JPM Contracting Corp. (hereinafter "JPM") . . . to the provisions of this agreement. The defendant further agrees that he and JPM will comply with any and all federal, state or local government regulations. To this end, the defendant and JPM agree to provide the government with quarterly compiled financial statements and a semi-annual audited financial statements [*sic*] concerning JPM's finances and compliance with such regulations.

5

Creizman 12/29/14 Decl. Ex. B at ¶5.  *See also, id.* ¶3(f) ("The defendant agrees to cooperate fully with the Internal Revenue Service in the ascertainment, computation and payment of his correct personal and *corporate* federal income tax liability for the years 1996 through the present) (emphasis added).

The government took the position in Mutino's cooperation agreement in Mutino's criminal case that *both* Mutino and JPM were bound by the terms of the cooperation agreement. The government made it a condition of the cooperation agreement that Mutino confirm he had the sole authority to bind JPM and would undertake the responsibility to ensure JPM's adherence to the terms of the cooperation agreement.  Accordingly, the government is now estopped from arguing that Mutino cannot seek relief for moneys it wrongfully took from JPM because Mutino, and not JPM, filed the third-party petition.[1]

### III. THE FUNDS FORFEITED IN THE MOHAWK ACTION ARE NOT PROCEEDS OF CRIMINAL CONDUCT

The government does not cite a single case for its bald proposition that the joint venture agreement between Rosewood and JPM violated MBE regulations and was somehow criminal. *See* Gov. Opp. at 13.  Mutino was never charged or pled guilty to any fraud based on the Silent Joint Venture between JPM and Rosewood.  Nor did the government ever pursue at the trial of any *Catapano* defendant a fraud count based on the non-disclosure to the City of the existence of the Silent Joint Venture.  Furthermore, no defendant in the *Catapano* case pled guilty or was

---

[1] The opinion cited by the government in its opposition brief, *United States v. Brown*, 86 Fed. Appx. 749, 765-66 (5th Cir. 2004), is inapposite.  In *Brown*, the original filings were found to be "so defective that the court refused to consider them" and therefore there was nothing to amend or relate back to the earlier filing date.  *Id.*  The petition filed by JPM in this case was timely and substantively correct. The petition was accepted by the court as reflected in the Second Order of Forfeiture that accounted for JPM's authorization to release funds to supplier Seville, but was simply never fully adjudicated by the court as statutorily required pursuant to 21 U.S.C. ¶ 853 (n)(2)-(3).

convicted on any offense, let alone fraud offense, based on the theory that non-disclosure of the Silent Joint Venture was a fraud on the City.

The Bayside Funds were subject to forfeiture in the *Mohawk* Action based on Mohawk's conviction of an offense involving MBE fraud.  Creizman 12/29/14 Decl. Ex. A.  The conspiracy to defraud the United States to which Mutino pled guilty was based on MBE fraud.  *Id.* Ex. C.  Had JPM been heard on its timely-filed petition, the government would have had to prove that the Bayside Funds "constitute or [are] derived from proceeds traceable" to the offense, *i.e.* MBE fraud.  18 U.S.C. 981(a)(1)(C).  It did not, could not, and cannot now demonstrate that the Bayside Funds are proceeds traceable to any MBE fraud or constitute proceeds of an MBE fraud.  *See, e.g.*, *United States v. Morrison*, 656 F. Supp. 2d 338, 344 (E.D.N.Y. 2009)(rejecting government's argument that all funds derived from business were subject to forfeiture, where "some portion of those proceeds were derived from activities which did not violate federal law," only funds derived from charged criminal activity were subject to forfeiture).

*Second*, the fact remains that regardless whether non-disclosure of the Silent Joint Venture could have been a basis for forfeiting the funds, Mutino negotatiated a final disposition with the government in respect to Mutino's forfeiture that withdrew the requirement that he relinquish his claims to the Bayside Funds.  The government's should not be permitted to deny Mutino the Bayside Funds in violation of the bargain it struck and frustrate Mutino's reasonble expectations under his cooperation agreeement by inventing post-hoc justifications as to why it should continue to benefit from those funds.  *See United States v. Eberhard*, 525 F.3d 175, 178 (2d Cir. 2008) (citations ommitted) (holding that a defendant is deprived of due process when the government breaches a plea-agreement provision on which the defendant relied "in any significant degree" when entering the guilty plea).

7

## II. CONCLUSION

Mutino's case presents fundamental errors of the kind prescribed to invoke the remedy of *coram nobis*. For all the reasons set forth above, the Court should grant Mr. Mutino's motion for *coram nobis* relief.

Dated: New York, New York
March 31, 2015

Respectfully submitted,

*/s/* Eric M. Creizman
Eric M. Creizman (EC-7684)
Creizman PLLC
565 Fifth Avenue, Fl. 7
New York, New York 10017
Tel.: (212) 972-0200
Fax: (646) 200-5022
Email: ecreiz@creizmanllc.com
